**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RAKIEM WILLIAMS, TONY BROWN, MEAGAN LEHNERT, and CHRISTINA GLENN,** *individually and on behalf of all others similarly situated*, | |
| **Plaintiffs,** | **Case No.:** _____ |
| v. | **CLASS ACTION COMPLAINT** |
| **LINEROCK INVESTMENTS, LTD., and VICMAN LLC,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

Plaintiffs Rakiem Williams, Tony Brown, Meagen Lehnert, and Christina Glenn (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class," as defined below), bring this Class Action Complaint against Defendants Linerock Investments, Ltd. ("Linerock") and VicMan LLC ("VicMan") (collectively, "Defendants") and, based upon Plaintiffs' personal knowledge, investigation by retained counsel, and personal belief, alleges as follows:

### NATURE OF THE CASE

1. Consumers in the United States face near-constant threats from hackers seeking to steal their personal information for nefarious purposes—for anything from making fraudulent purchases to committing identity theft.

2. These threats, however, do not come from bad actors alone. Applications installed on mobile devices may sometimes collect data without user consent, as well.

3. Since 2019, the Federal Bureau of Investigation has explicitly stated that it "considers any mobile application or similar product developed in Russia. . . to be a potential

counterintelligence threat, based on the data the product collects, its privacy and terms of use policies, and the legal mechanisms available to the Government of Russia that permit access to data within Russia's borders."[1]

4. The collection of data by Russian mobile apps becomes even more concerning when facial recognition technology or "biometric data" is involved, because "[f]or years, the Russian government has been exploring the potential of biometrics for surveillance and monitoring. . . . Authorities have been using cameras with facial recognition technology in public places to identify and prosecute peaceful protesters—a practice that is only increasing."[2]

5. Consumers have no expectations that this monitoring will occur. To the contrary, consumers expect that, if they are sharing their data with companies in connection with a potential transaction or use of an application, the companies will be transparent about what data is being collected, how it is being used, and by whom.[3] This is particularly so when companies collect what has come to be known as "biometric data."

6. Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data. It is similar to fingerprint authentication, where a user's fingerprint is used in lieu of a password or key, but with a facial scan, it is even more problematic.

---

[1] Nov. 25, 2019 Letter from FBI to Senator Charles E. Schumer, *available at* https://twitter.com/SenSchumer/status/1201607736900964353/photo/1 (accessed on May 12, 2022).

[2] Anastasiia Kruope, The Kremlin's Quest for Biometric Data, *Human Rights Watch* (Feb. 3, 2022), https://www.hrw.org/news/2022/02/04/kremlins-quest-biometric-data#.

[3] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

7.     While more than half of consumers are comfortable using fingerprint scans,[4] consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their faces.[5] And for good reason: in a recent, notorious example, a relatively unknown company, Clearview AI, scraped user photos from social media companies' databases, and used facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[6]

8.     In response to the ever-increasing prevalence and proliferation of biometric information collection, the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. 14, *et seq*. ("BIPA").

9.     BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

10.     In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n

---

[4] New Survey on Biometric Technology Shows Consumers Are OK With Some Forms and Wary of Others, *UT News* (May 3, 2018), https://news.utexas.edu/2018/05/03/new-survey-on-consumer-attitudes-toward-biometric-technology/.

[5] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more, facial%20recognition%20use%20on%20social%20media%20and%20apps.

[6] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* https://www.wired.com/story/clearview-ai-new-tools-identify-you-photos/#:~:text=Clearview%20has%20collected%20billions%20of,tying%20them%20to%20online%20profiles.

overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information*." 740 Ill. Comp. Stat. 14/5 (emphasis added).

11.     Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

12.     Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, Defendants—creators of an app with connections to Russia—have routinely collected, captured, received, obtained, stored, and/or used sensitive biometric data while refusing to inform users of their application whether, where, and for how long that data will be stored.

13.     Defendants have created a popular photo design platform, PhotoLab or PhotoLab PRO (collectively referred to herein as "PhotoLab" or the "App"). PhotoLab allows users to edit and design photos using its hundreds of effects, and then upload them to the App's community, where other users are able to "like" or comment on the photo.

14.     Many of PhotoLab's features rely upon Defendants' use of users' private, biometric information. In order to utilize many of the App's effects, PhotoLab scans users' photos using the App's special facial recognition technology to detect a user's face and identify facial key points.

15.     Unbeknownst to the App's users, Defendants routinely collect, capture, receive, obtain, store, and/or use sensitive biometric data of PhotoLab users. Users are unaware of this because Defendants fail to properly disclose whether, where, and for how long that data is stored.

16.     Moreover, the biometric identifiers and information captured and stored by the Defendants is disclosed to international entities, including Russian entities, without informing users.

17. By collecting, capturing, receiving, obtaining, storing, and/or using facial scans without obtaining informed consent and by failing to make public their data use and retention policy, Defendants have violated, and continue to violate, BIPA.

18. As a result of Defendants' BIPA violations, Plaintiffs, individually and on behalf of all others similarly situated, ask the Court to impose upon Defendants the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiffs' biometric identifiers and biometric information, as well as injunctive relief requiring Defendants' destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about Defendants' collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") because: (a) the proposed class consists of more than 100 members; (b) the parties are minimally diverse, as all members of the proposed class, including Plaintiffs, are citizens of Illinois—a state different from Defendants' home states of The British Virgin Islands and New York; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The estimated number of Illinois PhotoLab users detrimentally affected by Defendants' conduct, multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation), exceeds CAFA's $5,000,000 threshold.

20. This Court has personal jurisdiction over Defendants, because: (a) they transact business in the United States, including in this District; (b) they have substantial aggregate contacts with the United States, including in this District; (c) they engaged and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to

persons throughout the United States, including in this District, and purposely availed themselves of the laws of the United States and Illinois and directed their conduct toward Illinois citizens.

21.     Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

**A.     *Plaintiffs***

22.     Rakiem Williams is a citizen and resident of Cook County, Illinois. While in Illinois, Mr. Williams downloaded the PhotoLab App in 2019 and used it until approximately October, 2021. After he downloaded the App, and while in Illinois, he uploaded pictures of himself that he used for photo editing.

23.     Tony Brown is a citizen and resident of Cook County, Illinois. While in Illinois, Mr. Brown installed the PhotoLab App on his phone in February of 2020. After he downloaded the App, and while in Illinois, he uploaded pictures of himself that he used for photo editing.

24.     Meagen Lehnert is a citizen and resident of Cook County, Illinois. While in Illinois, Ms. Lehnert installed the PhotoLab App on her phone and used it until approximately October, 2021. After she downloaded the App, and while in Illinois, she uploaded pictures of herself that she used for photo editing.

25.     Christina Glenn is currently a citizen and resident of Jefferson County, Illinois. While living in Clinton County, Illinois, Ms. Glenn installed the PhotoLab App on her phone and used it until approximately 2019. After she downloaded the App, and while in Illinois, she uploaded pictures of herself that she used for photo editing.

**B.     *Defendants***

26.     Linerock Investments Ltd. ("Linerock") is a British Virgin Islands corporation with

its principal place of business in San Francisco, California.

27.     According to Linerock's LinkedIn profile, "For over 10 years, Linerock Investments, LTD has developed cutting edge online photo processing solutions. Its flagship app, Photo Lab, has been downloaded over 200 million times to date, with over 200K daily users. Other apps include Visage Lab, an automatic photo-retouching app and Emolfi Keyboard, an automatic sticker generator. Linerock Investments, LTD keeps products smart and simple: although its apps deploy sophisticated technologies (such as AI-driven algorithms and 3D face tracking), they allow the user to creatively express themselves through the click of a few buttons."

28.     Linerock claims to have 51-200 employees and states that its headquarters are in San Francisco, California. Seven employees are listed on its LinkedIn page, most of whom are based in Moscow, Russia.

29.     VicMan LLC ("VicMan") is a New York corporation with its principal place of business in Albany, New York.

30.     VicMan is owned by Victor Sazahin (also based in Russia), who created software called "Pho.to," the technology that Linerock's apps use.

31.     VicMan was previously incorporated under the name VicMan Software, Inc. in Virginia, where Mr. Sazahin developed his initial photo editing software. Mr. Sazahin has created his own promotional page on PhotoLab's website where he has uploaded dozens of his own creations.

32.     PhotoLab is listed as a "Linerock application" in the Google Play Store. In the Apple App Store, the PhotoLab app is registered under VicMan.

33.     At all relevant times, and in connection with the matters alleged herein, each Defendant acted as an agent, servant, partner, joint venturer, and/or alter ego of each of the other

Defendants, and acted in the course and scope of such agency, partnership, and relationship and/or in furtherance of such joint venture. Each Defendant acted with the knowledge and consent of each of the other Defendants and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other Defendants.

34.     Upon information and belief, at all relevant times, and in connection with the matters alleged herein, Defendants were controlled and largely owned by the same person, founder Victor Sazahin, and constitute a single enterprise with a unity of interest. Recognition of the privilege of separate existence under such circumstances would promote injustice.

## FACTUAL ALLEGATIONS

### A.     *Biometric Information and BIPA*

35.     In 2008, Illinois enacted BIPA in light of the "very serious need [for] protections for the citizens of Illinois when it comes to [their] biometric information."[7]

36.     The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

37.     Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."[8]

---

[7] 95th Ill. Gen. Assem. House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg), available at http://www.ilga.gov/house/transcripts/htrans95/09500276.pdf.

[8] 740 ILCS 14/5(c).

38.     BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

39.     "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." Id. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

40.     To address this vital area of data privacy, Section 15(b) of BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1)     informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2)     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.[9]

41.     Section 15(a) of BIPA further provides that:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.[10]

---

[9] 740 ILCS 14/15(b).

[10] 740 ILCS 14/15(a).

42.     To ensure these rights are enforceable, BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id.* at § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id.*

**B.      Defendants' PhotoLab Mobile Application**

43.     Defendants are software technology companies that specialize in online photo processing services and applications.

44.     Defendants' applications deploy sophisticated and opaque technologies, such as AI-driven algorithms and 3D face tracking that encourages users to creatively express themselves and allows users to digitally manipulate their own photographs at the unknowing expense of their biometric identifiers and information.

45.     Defendants' mobile applications are widely marketed and advertised on Apple's App Store and the Google Play Store.[11]

46.     Defendants' flagship application, PhotoLab, has been downloaded more than 260 million times to date, and has more than 200,000 daily users.

47.     PhotoLab is a photo design platform that allows users to edit and design photos with more than 900 effects, filters, and montages. Once an edited photo has been uploaded to the mobile application, other users can click "Like," comment on it, or use the same effect on their

---

[11] PhotoLab is registered to Defendant Linerock in the Google Play Store and to Defendant VicMan in Apple's App Store.

own photos.

48.     The Apple App Store Description describes PhotoLab as follows:

Photo Lab PRO - a full-featured Photo Fun Generator for your iPhone and iPad!

Photo Lab PRO contains more than 900 awesome effects for your photos including:

* fun photo montages,
* stylish photo effects,
* beautiful frames,
* fun face montages,
* lovely backgrounds,
* hilarious human-to-animal montages,
* holiday e-card templates,
* caricature effects,
* collages for multiple photos.

EXPLORE ARTWORKS BY OTHER USERS

The PRO version does not contain any ads and does not watermark your resulting images. Besides, it comes with extra groups of premium photo effects that you will not find in the standard version.

You will love the neat interface and how easily effects are created. You needn't do any cropping or - Photo montages with automatic face detection.

Become an astronaut, a medieval knight, a gangster or a beautiful fairy - all with a single tap!

- Photorealistic effects.

Put your face on a billboard or a banknote; put your photo into an ancient book or airbrush it on a posh car.

- Photo filters.

Neon Glow, Fire, Chalk & Charcoal, HDR, Pencil Drawing, Oil Painting, Impressionist Art, Jigsaw Puzzle, and more.

- Lovely backgrounds.

Change the background of your photo to make it look really romantic and beautiful!

- Human-to-animal montages.

What would it feel like being a tiger, a rabbit, a lion or a bird? Upload your portrait photo and check it out for yourself.

- Magazine covers for the ambitious and the fashionable.

Put your face on a magazine cover like Cosmopolitan, Vogue or Playboy and feel what it's like to be famous.

- Headwear.

Try on a King's crown, Elf hat, St. Patrick's Day hat or the most popular Santa hat!

- Caricature effects.

Animate faces and turn your portrait photos into amusing caricatures!

- Collages for multiple photos.

Put yourself together with your sweetheart or even all your friends into one photo collage.

Most of the effects let you add your own text onto the picture. Text style is designed particularly for each template.

Finally, you can save your masterpiece to Camera Roll, share it easily to Twitter, Facebook, Instagram or send it as a message (iMessage, MMS or SMS) to your friends.

More than 15,000 photos are processed with Photo Lab PRO every single day!

49.     For example, the following types of effects are also touted:



50.     PhotoLab allows users to edit and design photos using what the company describes as "AI-driven technologies under the hood." According to Defendants' Privacy Policy, Defendants' technology allows PhotoLab to use "face recognition technologies" to: (1) detect a face in a photo; (2) collect facial key points of its users; and (3) apply a desired effect to a photo.

51.     This technology permits Plaintiffs and the other Class members to manipulate their photos in different ways which all rely upon detecting and storing scans of the user's face.

**C.**     ***PhotoLab collects biometric information in violation of Section 15(b) of BIPA***

52.     Defendants' use of Illinois PhotoLab users' biometric information, including, but not limited to, facial detection and/or collection of facial "key points," violates Section 15(b) of BIPA.

53.     Defendants use the same Terms of Service and Privacy Policy for their entire suite of services, including PhotoLab. Those policies fail to comply with BIPA.

54.     First, Defendants' Privacy policy is ambiguous regarding the length of time for which PhotoLab users' face scans or other biometric information and identifiers are collected, captured, received, otherwise obtained, stored, and/or used.

55.     PhotoLab's Privacy Policy states that it retains the facial landmarks of non-registered users and users who do not share their results within the Defendants' suite of services for two weeks.

56.     However, for registered users who share their results within PhotoLab, the Privacy Policy states that: "the shared content will be stored on the servers and shown within the Services unless a user either removes the images themselves or requests such a removal by contacting our support team."

57.     As such, PhotoLab's Privacy Policy is unclear regarding exactly how long biometric information will be stored on the system. On its face, it appears that biometric data of registered users may be stored on Defendants' servers indefinitely unless a user requests to have it removed and destroyed.

58.     In addition, Defendants never requested or received a written release or consent from PhotoLab users (or their legal authorized representatives) before collecting, capturing, receiving, otherwise obtaining, storing, and/or using the face scans or other biometric information.

**D.    Defendants failed to provide a clear, written, publicly available policy regarding the retention and destruction of Section 15(a) of BIPA.**

59.    Defendants have also violated Section 15(a) of BIPA.

60.    PhotoLab's Terms of Service and Privacy Policy are unclear regarding the retention of biometric information or guidelines for the destruction of such information.

61.    According to Defendants' Privacy Policy, registered PhotoLab users' biometric information may be indefinitely stored on the server "unless a user either removes the images themselves or requests such a removal by contacting our support team." No other information is provided detailing the retention schedule or process for destroying biometric information.

62.    Thus, in direct violation of Section 15(a), Defendants have not developed a written, publicly available policy establishing a retention schedule and guidelines for permanently destroying PhotoLab users' biometric identifiers and biometric information.

## CLASS ACTION ALLEGATIONS

63.    Plaintiffs bring this lawsuit pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed class (the "Class"):

> Any resident of Illinois who used facial manipulations or facial effects in a photo uploaded to the PhotoLab App while the user resided in Illinois.

64.    If additional information is obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or amended complaint.

65.    Specifically excluded from the Class are: (a) Defendants; (b) Defendants' officers, directors, agents, trustees, representatives, employees, principals, servants, partners, and joint-venturers; (c) any entities controlled by Defendants; (d) Defendants' heirs, successors, assigns, or

other persons or entities related to or affiliated with Defendants, their officers, or their directors; and (e) the judge assigned to this action and any member of that judge's immediate family.

66.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

67.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The Class is sufficiently numerous that individual joinder is impracticable. At a minimum, the Class contains tens of thousands of members. Although the precise number of Class members is unknown to Plaintiffs, the true number of members of the Class is known by Defendants, and may be ascertained from Defendant's books, records, and electronically stored information.

68.     **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members. Such questions include:

a. whether Defendants collected, captured, received, otherwise obtained, stored, and/or used biometric identifiers or biometric information from Plaintiffs and the other Class members;

b. whether Defendants informed Plaintiffs and the other Class members that they would be collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric identifiers or biometric information;

c. whether Defendants informed Plaintiffs and the other Class members of the specific purpose and length of term for which their biometric identifiers or biometric information would be collected, captured, received, otherwise obtained, stored, and/or used;

15

d.  whether Defendants obtained a written release from Plaintiffs and the other Class members authorizing Defendants to collect, capture, receive, otherwise obtain, store, and/or use their biometric identifiers and biometric information;

e.  whether Defendants used biometric identifiers and biometric information to identify Plaintiffs and the other Class members;

f.  whether Defendants provided a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information;

g.  whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently;

h.  whether Plaintiffs and the other Class members are entitled to statutory damages under BIPA and the correct measure of those damages; and

i.  whether Plaintiffs and the other Class members are entitled to declaratory and injunctive relief.

69.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the other Class members  because, among other things, Defendants collected, captured, received, otherwise obtained, stored, and/or used their biometric information without informed consent in the exact same manner for each Class member.

70.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, and as a result, Plaintiffs will fairly and adequately protect the interests of the other Class members. Plaintiffs have retained counsel experienced in complex class actions, including successfully litigating class action cases

16

similar to this one, where a defendant breached statutory obligations, and intend to vigorously prosecute this case individually and on behalf of the other Class members. Further, Plaintiffs have no interests that are antagonistic to the other Class members.

71. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. The damages suffered by each Class member are relatively small compared to the burden and expense required to litigate a BIPA claim against Defendants. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

72. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

### **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION**
**Violation of the Illinois Biometric Privacy Act, 740 ILCS § 14/15**
**(Failure to Obtain Informed, Written Consent from Users Prior to**
**Capturing, Collecting, or Storing Biometric Identifiers)**

73. Plaintiffs incorporate the foregoing allegations in paragraphs 1-72, as if fully set forth herein.

74. BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first: (a) informs the subject or the subject's legally authorized representative,

in writing, that a biometric identifier or biometric information is being collected or stored; (b) informs the subject or the subject's legally authorized representative, in writing, of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (c) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b).

75. Defendants each qualify as a "private entity" under BIPA. 740 ILCS 14/10.

76. Plaintiffs and the other Class members had their biometric identifiers or biometric information captured, collected, stored, and used by Defendants through the PhotoLab app. Defendants' practice of collecting, storing and using Plaintiffs' and Class members' biometric identifiers or biometric information violated Plaintiffs' and Class members' right to privacy in their biometric identifiers or biometric information under BIPA. 740 ILCS 14/1, *et seq*.

77. Defendants did not inform Plaintiffs or the other Class members, in writing, that their biometric identifiers or biometric information would be "collected or stored" as required under 740 ILCS 14/15(b)(1).

78. Nor did Defendants inform Plaintiffs and the other Class members in writing of the "specific purpose and length of term for which [their] biometric identifier or biometric information is being collected, stored, and used" as required under 740 ILCS 14/15(b)(2).

79. Defendants also did not receive "a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b)(3).

80. By collecting, capturing, receiving, otherwise obtaining, storing, and/or using Plaintiffs' and the other Class members' biometric identifiers and biometric information,

Defendants violated the right of each Plaintiff and other Class member to keep private these biometric identifiers and biometric information.

81.    These privacy violations harmed Plaintiffs and the other Class members.

82.    Upon information and belief, Defendants' violations of 740 ILCS 14/15(a) and (b) were intentional or reckless because Defendants deliberately designed and implemented the artificial intelligence tools and facial filters in the app that collect, capture, receive, otherwise obtain, store, and/or use biometric identifiers and biometric information.

83.    Alternatively, Defendants' BIPA violations were negligent because Defendants breached the applicable standard of care by failing to ensure that PhotoLab users were informed of and consented to Defendants' collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric information and biometric identifiers.

84.    Defendants purposefully avoided providing notices or obtaining consent from Plaintiffs and the other Class members in order to ensure that as many users as possible downloaded and used PhotoLab.

85.    As a result of Defendants' intentional and/or reckless BIPA violations, Plaintiffs and the other Class members have been injured and will continue to be injured, in an amount to be proven at trial.

86.    Plaintiffs, individually and on behalf of the other Class members, seek: (a) injunctive and equitable relief as is necessary to protect Plaintiffs and the other Class members' interests, by requiring Defendants to comply with the 740 ILCS 14/15(b) requirements for the collection, storage, and use of biometric identifiers or biometric information; and (b) statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

and (c) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### SECOND CAUSE OF ACTION
**Violation of the Illinois Biometric Privacy Act, 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

87.     Plaintiffs incorporate the foregoing allegations in paragraphs 1-72, as if fully set forth herein.

88.     BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first: (a) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (b) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (c) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b).

89.     Plaintiffs and the other Class members had their biometric identifiers or biometric information captured, collected, stored, and/or used by Defendants through PhotoLab.

90.     Each Defendant qualifies as a "private entity" under BIPA. 740 ILCS 14/10.

91.     Defendants' practice of collecting, storing and using Plaintiffs' and the other Class members' biometric identifiers or biometric information violated Plaintiffs' and the other Class members' right to privacy in their biometric identifiers or biometric information under BIPA, 740 ILCS 14/1, *et s*eq.

92.     Defendants did not make available to the public a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first" as required under 740 ILCS 14/15(a).

93.     Defendants acted intentionally or recklessly in not making publicly available a data retention policy and guidelines for permanently destroying such identifiers or information, as required by 740 ILCS 14/15(a). Defendants did so to ensure that as many users as possible downloaded and used the app.

94.     Alternatively, Defendants acted negligently when they collected, stored, and used Plaintiffs' and the other Class members' biometric identifiers or biometric information without making publicly available a data retention policy and guidelines for permanently destroying such identifiers or information, as required under 740 ILCS 14/15(a).

95.     Plaintiffs, individually and on behalf of the other Class members, Plaintiffs seek: (a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the other Class members by requiring Defendants to make publicly available a policy for the permanent destruction of biometric identifiers or biometric information pursuant to 740 ILCS 14/15(a); (b) statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (c) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Biometric Privacy Act, 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and**
**Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

96.     Plaintiffs incorporate the foregoing allegations in paragraphs 1-72, as if fully set forth herein.

97.     Defendants each qualify as a "private entity" under BIPA. 740 ILCS 14/10.

98.     Plaintiffs and the other Class members had their biometric identifiers or biometric information captured, collected, stored, and used by Defendants through PhotoLab. Defendants' practice of disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the other Class members' biometric identifiers or biometric information to undisclosed third parties and corporate affiliates violated Plaintiffs' and the other Class members' right to privacy in their biometric identifiers or biometric information under BIPA, 740 ILCS 14/1, *et seq.*

99.     Defendants systematically and automatically "disclose[d], redisclose[d], or otherwise disseminate" Plaintiffs' and the other Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS § 14/15(d)(1). Defendants' disclosure or redisclosure was not made as part of a "financial transaction requested or authorized" by Plaintiffs or the other Class members, the disclosure or redisclosure was not "required by State or federal law or municipal ordinance," and the disclosure was not required pursuant to a valid warrant or subpoena. 740 ILCS 14/15(d)(2)-(4).

100.    Defendants acted intentionally or recklessly in disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the other Class members' biometric identifiers or biometric information. Defendants purposefully avoided providing notices or obtaining consent from Plaintiffs and the other Class members in order to ensure that as many users downloaded and used

PhotoLab as possible. Similarly, Defendants did not inform Plaintiffs and the other Class members that their biometric identifiers and biometric information was being distributed and/or redistributed to undisclosed corporate affiliates, third parties, and other business partners.

101.    In the alternative, Defendants acted negligently in disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the other Class members' biometric identifiers or biometric without obtaining written consent.

102.    As a result of Defendants' intentional and/or reckless violation of BIPA, Plaintiffs and the other Class members already have been injured and will continue to be injured, in an amount to be proven at trial.

103.    Plaintiffs, individually and on behalf of the Class, seek: (a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the other Class members by requiring Defendants to comply with the 740 ILCS 14/15(b) requirements for the collection, storage, and use of biometric identifiers or biometric information; and (b) statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (c) reasonable attorneys' fees and costs and other litigation expenses.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.    Entering an order certifying the Class as defined above, appointing Plaintiffs as Class Representatives, and appointing their undersigned counsel as Class Counsel;

b.    Declaring that Defendants' actions, as alleged above, violate section 15(a)–(b) of BIPA, 740 ILCS 14/1 *et seq.*;

c.    Awarding statutory damages of $5,000 for each of Defendants' intentional or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2) or, alternatively, statutory damages of $1,000 for each of Defendants' negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

d.    Awarding injunctive and equitable relief pursuant to 740 ILCS 14/20(4) requiring Defendants to comply with BIPA by providing a publicly available retention schedule or guidelines for permanently destroying the PhotoLab app users' biometric identifiers and biometric information and forcing Defendants to stop collecting, capturing, receiving, otherwise obtaining, storing, and/or using the biometric identifiers and biometric information of Plaintiffs and the other Class members without first obtaining their informed, written consent;

e.    Awarding Plaintiffs their attorneys' fees and costs pursuant to 740 ILCS 14/20(3);

f.    Awarding prejudgment and post-judgment interest as provided by law; and

g.    Awarding any further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf all others similarly situated, hereby demand a jury trial on all issues so triable.

Dated: May 12, 2022                    Respectfully submitted,

                                 /s/ Adam J. Levitt
                                Adam J. Levitt
                                Amy E. Keller
                                James Ulwick
                                **DiCELLO LEVITT GUTZLER LLC**
                                Ten North Dearborn Street, Sixth Floor
                                Chicago, Illinois 60602
                                (312) 214-7900
                                alevitt@dicellolevitt.com
                                akeller@dicellolevitt.com
                                julwick@dicellolevitt.com

James J. Pizzirusso*
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, D.C.  20006
(202) 540-7200
jpizzirusso@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
(646) 357-1100
snathan@hausfeld.com

Jeffrey D. Kaliel*
Sophia Gold*
**KALIELGOLD PLLC**
1100 15th Street, NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgoldpllc.com

Don Bivens*
**DON BIVENS PLLC**
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, Arizona  85254
(602) 708-1450
don@donbivens.com

*Pro Hac Vice Admission*
*Applications Imminent*

***Counsel for Plaintiffs***
***and the Proposed Class***