**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **RAKIEM WILLIAMS, TONY BROWN, MEAGAN LEHNERT, and CHRISTINA GLENN,** *individually and on behalf of all others similarly situated*, | ) ) ) ) ) ) | **Case No.: 1:22-cv-02531** |
| **Plaintiffs,** | ) ) | **The Honorable Charles P. Kocoras** |
| **v.** | ) ) | |
| **LINEROCK INVESTMENTS, LTD. and VICMAN LLC,** | ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS**
**CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**FACTUAL BACKGROUND**

A.      **Plaintiffs' Claims**

On May 12, 2022, Plaintiffs Rakiem Williams, Tony Brown, Meagen Lehnert, and Christina Glenn filed a class-action complaint alleging that Defendants Linerock Investments, Ltd. ("Linerock") and VicMan LLC ("VicMan") violated the Illinois Biometric Information Privacy Act of 2008 ("BIPA"), 740 Ill. Comp. Stat. 14, *et seq*., by unlawfully collecting, capturing, receiving, obtaining, storing, and/or using facial scans without obtaining informed consent and failing to make public their data use and retention policies. *See* ECF No. 1 ("Compl.").

Despite being properly served with the Complaint, neither Defendant answered or otherwise appeared in this case.  On November 18, 2022 Plaintiffs moved for entry of default against the Defendants under Rule 55(a). *See* ECF No. 22, Default Mot. ¶ 17. The Court granted Plaintiffs' motion on November 22, 2022, as clarified by the Court on November 30, 2022. *See* ECF No. 24, 26. Plaintiffs now seek to obtain class certification and proceed to a default class judgment.

Defendants are the creators of several popular photo design applications ("apps") marketed under the name "PhotoLab" on the Google Play Store and Apple App Store. Compl. ¶¶ 43–47.[1] The PhotoLab apps allow users to edit and design photos using hundreds of effects and then upload the photos to the apps' community where other users are able to "like" or comment on the photos. *Id.* ¶ 47. To apply many of these effects, PhotoLab uses "AI-driven technologies under the hood" to allow users to manipulate their photos in different ways that rely on detecting and storing scans of the user's face. *Id.* ¶¶ 50–51. According to Defendants' Privacy Policy, PhotoLab uses these

---

[1] "Upon default, the well-pled allegations of the complaint relating to liability are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Plaintiffs accordingly refer to the facts in the Complaint as simply facts rather than alleged facts.

"face recognition technologies" to: (1) detect a face in a photo; (2) collect facial key points of its users; and (3) apply a desired effect to a photo. *Id.* ¶ 50. These features have allowed PhotoLab to become extraordinarily popular. PhotoLab has been downloaded more than 260 million times and has more than 200,000 daily users. *Id.* ¶ 46.

Plaintiffs Rakiem Williams, Tony Brown, Meagen Lehnert, and Christina Glenn are Illinois residents who used the PhotoLab apps to upload and manipulate photographs of themselves. *Id.* ¶¶ 22–25. Through the PhotoLab apps, Defendants have violated—and continue to violate—BIPA by collecting, capturing, receiving, obtaining, storing, and/or using facial scans without obtaining informed consent from PhotoLab users, including Plaintiffs, and by failing to make public their biometric data use and retention policy. *Id.* ¶¶ 14–18.

Heightening potential privacy concerns, the Defendants have connections to Russia that are not disclosed to users. Defendants VicMan and Linerock claim that they are headquartered in Albany, New York and San Francisco, California, respectively. *Id.* ¶¶ 28–29. But LinkedIn lists seven employees for Linerock, and most of them are based in Moscow, Russia. *Id.* ¶ 28. Both Defendants are also controlled by Victor Sazahin, who is Russian. *Id.* ¶¶ 31–34. The collection of biometric data, as described above, by companies with ties to Russia has been of particular concern to counterintelligence agencies and human rights groups, as Russia has, for instance, used biometric information to target peaceful protestors for prosecution. *Id.* ¶ 3–4.

BIPA was enacted to protect Illinois residents from the improper or unauthorized use of their sensitive biometric information. *Id.* ¶¶ 35–36. Section 15(b) of BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

>      (1)     informs the subject or the subject's legally authorized
>              representative in writing that a biometric identifier or
>              biometric information is being collected or stored;
>      (2)     informs the subject or the subject's legally authorized
>              representative in writing of the specific purpose and length
>              of term for which a biometric identifier or biometric
>              information is being collected, stored, and used; and
>      (3)     receives a written release executed by the subject of the
>              biometric identifier or biometric information or the subject's
>              legally authorized representative.

740 ILCS § 14/15(b). Section 15(a), likewise, requires a company in possession of biometric information "to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information." *Id.* at § 14/15(a).

To ensure these privacy protections are enforceable, BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id.* at § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation is intentional or reckless, BIPA provides for the greater of actual damages or liquidated damages of $5,000 per violation. *Id.*

## B.     The Proposed Class

Plaintiffs bring this lawsuit on behalf of the following proposed Class:

>      Any resident of Illinois who used facial manipulations or facial
>      effects in a photo uploaded to the PhotoLab Apps while the user
>      resided in Illinois from May 12, 2017 to the present.

Excluded from the class are (a) Defendants; (b) Defendants' officers, directors, agents, trustees, representatives, employees, principals, servants, partners, and joint-venturers; (c) any entities controlled by Defendants; (d) Defendants' heirs, successors, assigns, or other persons or entities

3

related to or affiliated with Defendants, their officers, or their directors; and (e) the judge assigned to this action and any member of that judge's immediate family. *Id.* ¶ 65.

## LEGAL STANDARD

Plaintiffs brought this case as a class action and default judgment on a classwide basis is not proper unless a class is first certified. *Davis v. Hutchins*, 321 F.3d 641, 648 (7th Cir. 2003) (court must consider class certification before awarding class damages as part of a default judgment, otherwise only the named plaintiff can recover damages). District courts have broad discretion in deciding whether certification is appropriate, and their decisions are reviewed only for abuse of discretion. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The plaintiff bears the burden of showing that a proposed class satisfies the requirements of Rule 23, "but they need not make that showing to a degree of absolute certainty." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rather, it is "sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id.* (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

To make this showing, plaintiffs must begin by demonstrating that they meet all four of the requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Once plaintiffs have established that any proposed class meets the four requirements of Rule 23(a), plaintiffs must also show that the class meets one of the requirements of Rule 23(b). Plaintiffs move for certification both under Rule 23(b)(2) and Rule 23(b)(3).

The Court may certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**ARGUMENT**

**I.     The Court Should Certify the Class Under Rule 23(b)(2) and 23(b)(3).**

**A.     Certification is Proper in the Context of Defendants' Default.**

This motion for class certification comes before the Court in the rare—but not unprecedented—context of a default by Defendants under Federal Rule of Civil Procedure 55(a). Courts faced with similar defaults in the face of a class-action complaint have uniformly held that "the defaulted status of [a] Defendant should not preclude Plaintiff from receiving class certification." *Holmes v. DRS Processing LLC*, No. 3:18-CV-1193-J-39, 2020 WL 7419687, at *4 (M.D. Fla. Nov. 3, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 8222232 (M.D. Fla. Dec. 23, 2020). Courts have consistently rejected the premise that defendants could "avoid liability for a class action lawsuit simply by refusing to defend against it." *Michael Yang v. Assisted Credit Servs., Inc.*, No. SACV-15-2118, 2016 WL 10459417, at *1 (C.D. Cal. June 21, 2016).

Moreover, the "entry of default does not alter the Court's analysis for class certification." *Whitaker v. Bennett L., PLLC*, No. 13-CV-3145-L, 2014 WL 5454398, at *3 (S.D. Cal. Oct. 27, 2014). While a "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, including specifically allegations relating to the prerequisites for class certification under Federal Rule 23," *Juan Canizales Conde v. City Compassionate Caregivers, Inc.*, No. CV-20-5302, 2020 WL 9259837, at *2 (C.D. Cal. Nov. 10, 2020) (internal quotation marks omitted), Rule

5

23(c) imposes an "independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions," *Davis v. Hutchins*, 321 F.3d 641, 648–49 (7th Cir. 2003).

Numerous courts have granted class certification after entry of an order of default, but before entry of a default judgment, provided the requirements of Rule 23 are met. *See, e.g.*, *Lap Distribs. v. Glob. Contact – Int'l Publ'g Corp.*, No. 19-6317, 2020 WL 1616505, at *5 (D.N.J. Apr. 1, 2020); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 703 (S.D. Fla. 2018); *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 2:16-cv-00823, 2017 WL 3284797, at *1, 6 (E.D. Cal. Aug. 2, 2017); *Bystry v. Royal Oak Indus., Inc.*, No. 1:16-cv-210, 2017 WL 4250530, at *1 (W.D. Mich. Sep. 22, 2017); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2014 WL 4809520, at *16 (E.D. La. Sep. 26, 2014). Plaintiffs seek a similar finding here.

### A.     The Class Satisfies the Requirements of Rule 23(a).

Under Federal Rule of Civil Procedure 23(a), a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Class satisfies all these requirements.

#### 1.     Numerosity

While there is no "magic number" required to satisfy numerosity, "a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Id.* at 498 (quoting *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017)). Here, information that is publicly available and information that has been received from third parties in response to Plaintiffs' subpoenas indicate that there are at least tens of thousands – and likely hundreds of thousands –

6

of Class members, making joinder impracticable and satisfying the numerosity requirement. Compl. ¶ 67. Although the precise number of class members is not yet known, "it's reasonable to believe it [is] large enough to make joinder impracticable and thus justify a class action suit." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (quoting *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014)).

### 2.     *Commonality*

Rule 23(a)'s requirement that there be "questions of law or fact common to the class," is also satisfied here. The claims of all class members will hinge on the central common question of whether Defendants' conduct violated BIPA. This issue, which is "central to the validity of each one of the claims" of the class members, is a quintessential issue "capable of classwide resolution." *Lacy v. Cook County*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Unlike cases where "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff," here, Defendants' conduct was the same with respect to the entire class. *Id.* at 865–66 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). Whether this conduct violated BIPA is the central question of this litigation, common to the entire class, and capable of classwide resolution.[2]

### 3.     *Typicality*

Likewise, the Plaintiffs satisfy the typicality requirement of Rule 23(a). A Plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy*, 897 F.3d at 866 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Typicality is liberally construed, and claims do not need to be identical to satisfy the requirement. *Smith v. Aon Corp.*,

---

[2] Other common questions include whether Defendants' conduct was negligent or reckless under Section 20 of BIPA and whether the class is entitled to equitable relief. *See* 740 ILCS § 14/20.

238 F.R.D. 609, 615 (N.D. Ill. 2006). Rather, the claims of the Plaintiffs need only share "the same essential characteristics as the claims of the class at large." *Lacy*, 897 F.3d at 866 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).

That standard is easily satisfied here. Plaintiffs are Illinois residents who all used PhotoLab to upload and manipulate photographs. Compl. ¶¶ 22–25. By definition, members of the Class are similarly situated. *See Id.* ¶ 63. Plaintiffs' claims are based on the same course of conduct by Defendants (the collection of sensitive biometric identifiers and biometric information without informed consent or the disclosure of a use and retention policy) and based on the same legal theory (that the collection of such data violates BIPA) as all class members. This is sufficient to establish typicality. *See Lacy*, 897 F.3d at 866.

### 4.     *Adequacy of Representation*

Plaintiffs will fairly and adequately protect the interests of the Class under Rule 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). For a conflict of interest to defeat class certification, that conflict "must be 'fundamental'" and must be more than merely hypothetical. *Srail v. Vill. of Lisle*, 249 F.R.D. 544, 555 (N.D. Ill. 2008) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.2006)); *see also Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012).

There is no such conflict here. As discussed above, the Plaintiffs assert the same claims based on the same alleged conduct as other class members. The lack of any conflict is further solidified by the fact that Plaintiffs are seeking statutory damages and equitable relief that would apply equally to the class. *See Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 287 (N.D. Ill. 2008).

8

Plaintiffs are also represented by skilled and experienced trial counsel. As discussed below, Plaintiffs' counsel are some of the most experienced data privacy attorneys in the United States. There is no doubt that the interests of the class will be adequately represented by their counsel.

**B.      The Class Satisfies the Requirements of Rule 23(b)(3).**

The Class also satisfies the requirements of Rule 23(b)(3) for a class action seeking damages. Because all class members were exposed to the same conduct from the Defendants and BIPA provides a statutory floor for potential damages, common issues will overwhelmingly predominate over any individualized issues that may arise. And the adjudication of the class members' claims through a single class action is far superior to individual claims from potentially hundreds of thousands of individual litigants.

### 1.      *Predominance*

There is "no mathematical or mechanical test" to determine whether questions of law or fact common to class members "predominate" over questions that are individual to members of the class. *Messner*, 669 F.3d at 814 (citing 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). Fundamentally, predominance turns on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem*, 521 U.S. at 623).

Here, common issues will overwhelmingly predominate over any individualized issues. As discussed above, the central issue in this litigation—whether Defendants' collection of sensitive biometric data without informed consent or the disclosure of a use and retention policy violates BIPA—is a common issue that cuts across the entire class (and here, it is undisputed). *See Rogers v. BNSF Ry. Co.*, No. 19-cv-3083, 2022 WL 854348, at \*3 (N.D. Ill. Mar. 22, 2022) (holding that common issues predominated and certifying BIPA class action where the common issue of

9

whether the defendant "collected biometric information in violation of BIPA will predominate over any potential individualized issues").

Moreover, BIPA provides a statutory floor to any potential damages recovered by class members. Although the need for individual damages determinations would not preclude class certification, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015), here it is certain that if Plaintiffs succeed in a default class judgment of their claims, all class members would be entitled to liquidated damages of at least $1,000 per violation. 740 ILCS § 14/20. This statutory floor for damages significantly reduces the potential for any material individualized issues to arise.

### 2. Superiority

Courts readily find that a class action is superior where, as here, "Defendant engaged in standardized conduct . . . and each individual consumer's claim would likely be too small to vindicate through an individual suit." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008). The multitude of common issues in this case easily satisfy the superiority requirement. *See, e.g.*, *Messner*, 669 F.3d at 815 n.5 ("There are so many common issues of law and fact relating to the issue of [Defendant's] liability . . . that the superiority requirement likely poses no serious obstacle to class certification here."); *Rogers*, 2022 WL 854348, at *4 (N.D. Ill. Mar. 22, 2022) (finding BIPA claims "well-suited for class treatment"). Individual litigation by potentially hundreds of thousands of litigants harmed by the Defendants' conduct would be an unjustifiable drain on the resources of the Court, the individual litigants, and the Defendants.

### C. The Class Satisfies the Requirements of Rule 23(b)(2).

Because Plaintiffs seek classwide injunctive and equitable relief to protect Plaintiffs and Class members by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric information, class certification is also appropriate under Rule 23(b)(2). *See Chicago Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d

426, 441–43 (7th Cir. 2015) (certifying a class under both 23(b)(3) (for damages) and 23(b)(2) (for

equitable relief)). As discussed above, the Class easily satisfies the numerosity, commonality,

typicality, and adequacy elements of Rule 23(a). Certification under Rule 23(b)(2) is proper where,

as here, the Defendants have "acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class

as a whole." Defendants' failure to comply with BIPA's requirements for the collection, storage,

and use of biometric information applies generally to the members of the Class, and certification

under Rule 23(b)(2) is appropriate.

### D. The Class Is Ascertainable.

In addition to satisfying the requirements of Rule 23(a) and (b), the class definition must

be "sufficiently definite that its members are ascertainable." *Lacy*, 897 F.3d at 864 (quoting *Jamie*

*S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). A class is ascertainable if it is

"defined by objective criteria." *Mullins*, 795 F.3d at 657. A class definition that "'identifies a

particular group of individuals . . . harmed in a particular way . . . during a specific period in

particular areas' indicates a definite and ascertainable class." *T.K. Through Leshore v. Bytedance*

*Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *2 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*,

795 F.3d at 660–61).[3] This standard is readily satisfied in this case, as the members of the Class

---

[3] The Seventh Circuit has specifically rejected the "heightened" ascertainability requirement imposed by some circuits that have required plaintiffs to demonstrate a "reliable and administratively feasible" way to identify class members at the class-certification stage. *Mullins*, 795 F.3d at 657 ("Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of skewing the balance that district courts must strike when deciding whether to certify classes."); *see also T.K. Through Leshore*, 2022 WL 888943, at *2 ("Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" (quoting *Mullins*, 795 F.3d at 659)). Mindful of the need to identify Class members and provide notice despite the Defendants' default, however, Plaintiffs have issued subpoenas to third-parties Apple Inc. and Google LLC seeking

are identifiable based on objective criteria: whether (1) they are a resident of Illinois (2) who used

facial manipulations or facial effects in a photo uploaded to the PhotoLab apps (3) while the user

resided in Illinois.

## II.     The Court Should Appoint DiCello Levitt, Hausfeld, and KalielGold as Class Counsel.

To certify a class under Rule 23, the Court must also appoint class counsel. In appointing

class counsel, the Court must consider: (a) the work counsel has done in identifying or

investigating potential claims in the action; (b) counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action; (c) counsel's knowledge of

the applicable law; and (d) the resources that counsel will commit to representing the class. Fed.

R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability

to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class counsel from the firms of DiCello Levitt LLP ("DiCello Levitt"), Hausfeld

LLP ("Hausfeld") and KalielGold PLLC ("KalielGold") have invested substantial time, effort, and

expense in investigating and pursuing this action. As further set forth in their firm resumes, the

attorneys from each firm are highly experienced in complex consumer-protection and data-privacy

class actions. Decl. of I. Engdahl, Ex. A–C. These attorneys' track record of success in pursuing

some of the largest and most significant data-privacy class actions demonstrates counsel's

knowledge and skill in this area. In addition to the requisite experience and expertise, proposed

class counsel also have the necessary resources to zealously pursue this case on behalf of the Class.

Accordingly, Plaintiffs request that the Court appoint Nada Djordjevic of DiCello Levitt, James

Pizzirusso of Hausfeld, and Sophia Gold of KalielGold as co-lead counsel.

---

records in their possession relevant to this case. Plaintiffs are working with these third parties to
determine what records are available to allow Class members to be identified and provided with
notice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court grant Plaintiffs'

motion to certify the Class and appoint class counsel.

Dated: September 7, 2023

Respectfully submitted,

 */s/ Nada Djordjevic*
Adam J. Levitt
Amy E. Keller
Nada Djordjevic
James A. Ulwick
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

James J. Pizzirusso (*admitted pro hac vice*)
Ian Engdahl (*admitted pro hac vice*)
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, D.C. 20006
(202) 540-7200
jpizzirusso@hausfeld.com
iengdahl@hausfeld.com

Steven M. Nathan (*admitted pro hac vice*)
Katherine Hanson (*admitted pro hac vice*)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
(646) 357-1100
snathan@hausfeld.com
khanson@hausfeld.com

Jeffrey D. Kaliel*
Sophia Gold*
**KALIELGOLD PLLC**
1100 15th Street, NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783

jkaliel@kalielpllc.com
sgold@kalielgoldpllc.com

*Pro Hac Vice Application Forthcoming**Counsel for Plaintiffs
and the Proposed Class**

14

**<u>CERTIFICATE OF SERVICE</u>**

Nada Djordjevic certifies that she served the foregoing document on all counsel of record, by this Court's electronic-filing system, this 7th day of September, 2023.


/s/ *Nada Djordjevic*
Nada Djordjevic